IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> and <br><br> STATE OF WEST VIRGINIA, by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION <br><br> *Plaintiffs*, <br><br> v. <br><br> MESSER LLC <br><br> *Defendant*. | ELECTRONICALLY FILED <br> Jun 22 2023 <br> U.S. DISTRICT COURT <br> Northern District of WV <br><br> Civil Action No. **5::23-CV-233 (Bailey)** |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of West Virginia, by and through the West Virginia Department of Environmental Protection ("WVDEP") (collectively, "Plaintiffs"), file this Complaint, and allege as follows:

### INTRODUCTION

1. This is a civil action for injunctive relief and civil penalties brought against Defendant Messer LLC ("Messer") pursuant to Sections 309(b) and (d) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. §§ 1319(b) and (d), and Chapter 16, Article 1, Section 9a of the West Virginia Code, W. Va. Code § 16-1-9a, for violations of the National Pollutant Discharge Elimination System ("NPDES") permit applicable to its industrial gas manufacturing facility located at 616 Dry Run Road, New Cumberland, West Virginia 26047. Messer has violated its NPDES permit on at least 186 occasions since 2016.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345, and 1355.

3. This Court has supplemental jurisdiction over the WVDEP claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the WVDEP claims are so related to the federal claims as to form part of the same case or controversy.

4. Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Messer is doing business and in which the violations alleged in the Complaint occurred.

5. Authority to bring this action is vested in the United States Department of Justice under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. § 516.

6. Authority to bring this action on behalf of the State of West Virginia is vested in the WVDEP under W. Va. Code §§ 22-11-7, 22-11-22, 22-12-5, and 22-12-10.

7. As signatory of this Complaint, WVDEP has actual notice of commencement of this action as required by Section 309(b), 33 U.S.C. § 1319(b).

## STATUTORY AND REGULATORY BACKGROUND

### Clean Water Act

8. The objective of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a national goal to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1).

9. To achieve that objective and goal, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person," to waters of the United States, except, *inter alia*, in compliance with an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

11. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, chemical and industrial waste.

12. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" to mean "the waters of the United States, including the territorial seas."

13. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged."

14. Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include a "corporation, partnership, [or] association."

15. Section 402 of the CWA, 33 U.S.C. § 1342, provides that the permit-issuing authority may issue an NPDES permit that authorizes the discharge of any pollutant to waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

16. Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), directs the EPA Administrator to prescribe conditions and limitations, including effluent limitations, for NPDES

permits to assure compliance with the requirements of the CWA. 33 U.S.C. § 1342(a)(2); *see also* 33 U.S.C. § 1311.

17. Section 502(11) of the CWA, 33 U.S.C. § 1362(11), defines "effluent limitation" to mean "any restriction . . . on quantities, rates, and concentrations of chemical, physical, biological, and other constituents that are discharged from point sources into navigable waters."

18. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes civil actions for appropriate relief, including a permanent or temporary injunction, against any person who violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, any person who violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $64,618 per day for each violation.

20. Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a state may establish its own permit program, and after receiving EPA's authorization of its program, may issue NPDES permits within its jurisdiction. EPA retains concurrent enforcement authority pursuant to Section 402(i) of the CWA, 33 U.S.C. § 1342(i).

21. At all times relevant to this Complaint, the State of West Virginia has been authorized by EPA to administer an NPDES program for regulating the discharge of pollutants into navigable waters within the state's jurisdiction. 47 Fed. Reg. 22,363-01 (May 24, 1982). Pursuant to W. Va. Code §§ 22-1-5, 22-1-7, and 22-11-4(a), WVDEP is the state regulatory agency that administers the NPDES permit program in West Virginia.

West Virginia Water Pollution Control Act

22. Section 8 of the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code § 22-11-8, prohibits any person to discharge any pollutant from any point source into waters of the State of West Virginia, except, *inter alia*, in compliance with a West Virginia NPDES permit issued pursuant to the WPCA.

23. Section 3 of the WPCA, W. Va. Code § 22-11-3(14) defines "person" to include "any industrial user, public or private corporation, institution, association, firm or company organized or existing under the laws of this or any other state or country[,] . . . industry[,] . . . partnership[,] . . . or any legal entity . . . ."

24. Section 3 of the WPCA, W. Va. Code § 22-11-3(16), defines "pollutant" to include industrial waste.

25. Section 3 of the WPCA, W. Va. Code § 22-11-3(15) defines "point source" to mean "discernible, confined and discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock or vessel or other floating craft, from which pollutants are or may be discharged."

26. Section 3 of the WPCA, W. Va. Code § 22-11-3(23) defines "waters" of the State of West Virginia to mean "any and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within this state, or bordering this state and within its jurisdiction" including rivers.

27. Section 22 of the WPCA, W. Va. Code § 22-11-22, authorizes WVDEP to commence a civil action for injunctive relief to compel compliance with, and enjoin violations of, any provision of the WPCA or any term or condition of an NPDES permit issued under the WPCA. Section 22 of the WPCA also provides that any person who violates any provision of an

NPDES permit issued pursuant to Section 8 of the Water Pollution Control Act, W. Va. Code § 22-11-8, is subject to a civil penalty of up to $25,000 per day for each violation.

## DEFENDANT

28.   Messer owns and operates the industrial gas manufacturing facility located at 616 Dry Run Road, New Cumberland, West Virginia 26047 ("Facility").

29.   Messer acquired ownership of the Facility on March 1, 2019 when the Facility was divested to Messer from Linde LLC. At all times relevant to the Complaint prior to March 1, 2019, Linde LLC owned and operated the Facility.

30.   On March 1, 2019, Messer assumed ownership, operation, and sole responsibility for maintaining the Facility. At the time Messer acquired ownership, it assumed liability for the CWA violations that occurred during the period of Linde's ownership.

31.   Messer is incorporated in Delaware, with its principal office address at 200 Somerset Corporate Blvd., Suite 7000, Bridgewater, NJ 08807.

32.   Messer is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5) and in Section 3 of the WPCA, W. Va. Code § 22-11-3(14).

33.   At all times relevant to this Complaint, Messer has done business in the Northern District of West Virginia.

## GENERAL ALLEGATIONS

### Messer's Operations and the Facility

34.   The Facility is an industrial gas manufacturing and distribution site that produces liquid nitrogen, oxygen, argon, and krypton/xenon. The Facility was constructed in 1967 and has been operating continuously since its opening.

35.   Gas is manufactured at the Facility in the Air Separation Unit, which includes a cooling tower and compressors. The Air Separation Unit filters, compresses, and chills

atmospheric air. The chilled air enters a distillation column where the air is distilled at very low temperature into its individual components (oxygen, nitrogen, argon, and krypton/xenon).

36. The Facility covers approximately 25 acres and operates 24 hours a day, seven days a week.

37. The Facility is located directly adjacent to the Ohio River.

The Facility's Effluent and Receiving Waterway

38. The Facility discharges wastewater through Outfall 001, which discharges into a swale that discharges directly into the Ohio River.

39. Outfall 001 is a "point source" within the meaning of 33 U.S.C. § 1362(14) and W. Va. Code § 22-11-3(15).

40. The Ohio River is a perennial waterway that serves as a natural boundary between West Virginia and Ohio. The Ohio River flows into the Mississippi River.

41. The Ohio River is a "navigable water" as that term is defined in 33 U.S.C. § 1362(7).

42. The Ohio River is a water of the State of West Virginia within the meaning of W. Va. Code § 22-11-3(23).

43. The wastewater discharged from the Facility contains various "pollutants" as that term is defined in 33 U.S.C. § 1362(6) and W. Va. Code § 22-11-3(16), including but not limited to, copper, iron, chlorine, aluminum, and phenolics.

44. Wastewater discharged through Outfall 001 contains stormwater and process wastewater.

45. Stormwater flow at the facility is captured in vegetated drainage ditches running east-west that feed into a larger swale running north-south. Drainage through the swale discharges through Outfall 001 near the southwest corner of the Facility.

46. Until at least 2020, the Facility also produced wastewater from vehicle washing and runoff from the fueling area. This wastewater was processed through an oil-water separator, then discharged through Outlet 201, which drains into Outfall 001. Messer has since stopped sending wastewater into this outlet. Wastewater from Outlet 201 has contained aluminum and iron. Outlet 201 still collects and sends stormwater to Outfall 001.

47. Wastewater is created as part of the manufacturing process. Water is first used in the cooling towers and passed through the cooling tower treatment system.

48. After exiting the cooling tower treatment system, process water is cycled through plant processes where it is used to cool the outside shell of the compressors, including compressors labeled CP-41, CP-402B, CP-53, CP 11-4, CP-55, and Unit 11-3.

49. The air compressors are sources of copper and aluminum found in the process wastewater.

50. The biocide chemicals used to treat cooling tower water are sources of total residual chlorine.

51. Stormwater is a source of phenolics and aluminum.

52. Vehicle washing, stormwater, and compressor unit CP-55 are sources of iron.

53. Copper contamination can lead to reproductive failure, gill damage, and reduced sense of smell in fish. Human exposure to high concentrations can cause nausea, vomiting, diarrhea, and liver and kidney damage.

54. Chlorine atoms combine together rapidly to form chemicals such as dioxins that pollute water, contaminate fish, and transfer to humans and larger animals that eat the fish.

55. Iron contamination can lead to growth reduction, greater susceptibility to injury and disease, and decreased hatchability in fish. Human exposure to high concentrations can cause metabolic changes and damage to the pancreas, liver, spleen, and heart.

56. Aluminum contamination can lead to the inability of fish to maintain the balance of their fluids and is associated with damage to amphibian eggs and larvae, mostly in areas under acid stress. Human exposure to high concentrations has been linked to Alzheimer's disease.

57. Phenol is considered to be toxic to humans via oral exposure. Diarrhea as well as blood and liver effects have been reported in chronically exposed humans.

### The NPDES Permit

58. At all times relevant to this Complaint, discharges from the Facility have been subject to the terms and conditions of NPDES Permit No. WV0049361 ("NPDES Permit").

59. The NPDES Permit authorizes the Facility to discharge wastewater and stormwater into the Ohio River via Outfall 001. The NPDES Permit contains effluent limitations prohibiting discharges of specific pollutants in excess of numeric monthly average, daily maximum, and instantaneous maximum limits.

60. The NPDES Permit imposes self-monitoring and self-reporting requirements, including the monthly submission to WVDEP of discharge monitoring reports ("DMRs"), which summarize discharge monitoring data and indicate noncompliance with permit effluent limitations.

### CLAIM FOR RELIEF
**Violations of NPDES Permit No. WV0049361**
**Effluent Limitations**

61. The allegations of the foregoing paragraphs are realleged and incorporated herein by reference.

62. The NPDES Permit contains effluent limitations for multiple pollutants, including total residual chlorine, copper, iron, aluminum, and total suspended solids.

63. Based on DMRs submitted to WVDEP, as well as Defendant's certified CWA Section 308 Response, Defendant has exceeded applicable effluent limitations in the NPDES Permit on at least 186 occasions since February 2016. *See* Exhibit A.

## Relief

64. Each violation of NPDES Permit No. WV0082759 is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

65. Unless enjoined, Messer's violations are likely to continue.

66. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of the WPCA, W. Va. Code § 22-11-22, Messer is liable for permanent injunctive relief.

67. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Messer is liable for civil penalties of up to $64,618 per day for each violation.

68. Pursuant to W. Va. Code § 22-11-22, Messer is liable for civil penalties up to $25,000 per day for each violation of NPDES Permit No. WV0082759.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

A. Permanently enjoin Messer from discharging pollutants except as expressly authorized by the limitations and conditions of the Facility's NPDES Permit;

B. Order Messer to take all necessary steps to comply with the limitations and conditions of the NPDES Permit;

C. Assess civil penalties against Messer of up to $64,618 per day for each violation of the NPDES Permit;

10

D. Assess civil penalties against Messer up to $25,000 per day for each violation under W. Va. Code § 22-11-22;

E. Award the Plaintiffs their costs in this action; and

F. Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*s/ Sylvia Lam*
SYLVIA LAM
DC Bar No. 1049147
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-4903
Sylvia.Lam@usdoj.gov

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

*s/ Maximillian F. Nogay*
MAXIMILLIAN F. NOGAY
Assistant United States Attorney
W. Va. Bar # 13445
United States Attorney's Office
P.O. Box 591
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
(304) 234-0100 office
(304) 234-0110 facsimile
Max.Nogay@usdoj.gov

FOR THE STATE OF WEST VIRGINIA

*s/ Brooke Hirst*
BROOKE HIRST
WV Bar ID No.13892
Attorney, Office of Legal Services
West Virginia Department of Environmental Protection
601 57th Street Southeast
Charleston, WV 25304
brooke.hirst@wv.gov